UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LOUIS VIGNOLA, individually; TAMARA HARLESS, as Special Administrator for the Estate of NANCY MARIE OUELLET; LOUIS VIGNOLA as Guardian ad Litem for CAROLYN VIGNOLA, a minor; and LOUIS VIGNOLA as Guardian ad Litem for GABRIEL VIGNOLA, a minor,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CHARLES ALFRED GILMAN, JR.; AUTO-OWNERS INSURANCE COMPANY; and MUTUAL OF ENUMCLAW INSURANCE COMPANY,<br><br>　　　　Defendants. | 2:10-CV-02099-PMP-GWF<br><br><br>ORDER |

Presently before the Court is Defendant Auto-Owners Insurance Company's Motion to Dismiss (Doc. #10), filed on January 26, 2011. Plaintiffs filed a Response (Doc #12) on February 7, 2011. Defendant Auto-Owners Insurance Company filed a Reply (Doc. #13) on February 17, 2011.

**I. BACKGROUND**

In June 2010, Nancy Marie Ouellet ("Ouellet") was operating her motorcycle on US 93 in Nevada when Defendant Charles Gilman's ("Gilman") automobile struck her motorcycle. (Notice of Removal, Ex. A at ¶ 7.) As a result of the collision, Ouellet suffered serious injuries and died. (Id.)

///

1    Ouellet maintained a motorcycle insurance policy through Defendant Auto-
2 Owners Insurance Company ("Auto-Owners"), a Michigan corporation with its principal
3 place of business in Michigan. (Pls.' Opp'n to Mot. to Dismiss (Doc. #12), Ex. 2; Mot. to
4 Dismiss (Doc. #10), Ex. A.) Ouellet resided in Colorado at the time she purchased the
5 motorcycle insurance policy from Defendant Auto-Owners, and at the time of the accident.
6 (Pls.' Opp'n to Mot. to Dismiss, Exs. 2-3.)

7    Plaintiffs Louis Vignola, Carolyn Vignola, and Gabriel Vignola are Ouellet's
8 heirs, and Plaintiff Tamara Harless is the Special Administrator of Ouellet's estate. (Notice
9 of Removal, Ex. A at ¶¶ 2-3, 8-10.) Plaintiffs filed a claim with Defendant Mutual of
10 Enumclaw Insurance Company ("Enumclaw") for bodily-injury benefits under Defendant
11 Gilman's auto insurance policy. (Id. at ¶ 39.) Additionally, Plaintiffs filed a claim with
12 Defendant Auto-Owners requesting the policy limits for under-insured motorist coverage
13 under Ouellet's insurance policy. (Id. at ¶ 18.)

14    Between August and November 2010, Plaintiffs' counsel, located in Nevada,
15 exchanged a series of letters with Auto-Owners in which Plaintiffs demanded payment of
16 the policy limits from Auto-Owners. (Pls.' Opp'n to Mot. to Dismiss, Exs. 1-20.) Auto-
17 Owners responded by requesting further information regarding Ouellet's income, her
18 marital status at the time of death, and the identity of her estate's representative. (Pls.'
19 Opp'n to Mot. to Dismiss (Doc. #12), Exs. 1-20.) Auto-Owners also took the position that
20 its duty to pay uninsured motorist coverage was not triggered until the at-fault party's
21 liability insurance limits were exhausted by a judgment or a settlement. (Id.)

22    Plaintiffs filed the present Complaint in the Eighth Judicial District Court of
23 Clark County, Nevada on November 2, 2010. Plaintiffs' Complaint asserts claims of
24 wrongful death, negligence, and loss of consortium against Defendant Gilman. (Id. at
25 ¶¶ 11-14.) Additionally, Plaintiffs' Complaint asserts a bad faith claim against Defendant
26 Enumclaw and requests declaratory relief regarding the limits of Defendant Gilman's

2

1  insurance policy. (Id. at ¶ 80.) Finally, Plaintiffs' Complaint alleges Defendant Auto-
2  Owners acted in bad faith by refusing to promptly settle their claims and engaged in various
3  unfair claims practices. (Id. at ¶¶ 18-35.)
4        Defendant Auto-Owners removed the case to this Court on December 2, 2010.
5  (Notice of Removal.) Defendant Auto-Owners now moves to dismiss Plaintiffs' claims,
6  arguing it is not subject to personal jurisdiction in this Court. Defendant Auto-Owners
7  argues it has not conducted any business in Nevada or otherwise engaged in activity in
8  Nevada sufficient to establish minimum contacts. Defendant Auto-Owners also argues it
9  cannot be subject to personal jurisdiction based on the unilateral act of Ouellet driving in
10  Nevada, or the unilateral act of Plaintiffs in retaining counsel in Nevada.
11        Plaintiffs respond by arguing Defendant Auto-Owners is subject to personal
12  jurisdiction because the accident occurred in Nevada, it was foreseeable that Auto-Owners'
13  insured would drive in Nevada, and Auto-Owners sent correspondence to Plaintiffs'
14  attorneys in Nevada. Plaintiffs also argue Auto-Owners committed a tort in Nevada by its
15  refusal to promptly respond to the policy limit demands of Plaintiffs' Nevada counsel and
16  by delaying payment through correspondence with Plaintiffs' Nevada counsel. Finally,
17  Plaintiffs contend that Auto-Owners' policy subjects it to personal jurisdiction in Nevada
18  because it incorporates Nevada law into the policy.
19  **II. DISCUSSION**
20        A plaintiff bears the burden of demonstrating jurisdiction is proper in response to
21  a defendant's motion to dismiss for lack of personal jurisdiction. Schwarzenegger v. Fred
22  Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). When the Court does not hold an
23  evidentiary hearing, a plaintiff is required to make only a prima facie showing of personal
24  jurisdiction. Id. When the motion to dismiss is based on the pleadings and affidavits, the
25  court takes as true uncontroverted allegations in the plaintiff's complaint. Id.
26  ///

Where there is no federal statute governing personal jurisdiction, the law of the forum state applies. Id. Nevada's personal jurisdiction statute provides that "[a] court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065(1). Nevada's jurisdictional statute confers jurisdiction to the same extent authorized under the United States Constitution, therefore jurisdictional analyses under state law and federal due process are the same. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

Due process requires that a non-resident defendant have "minimum contacts" with the forum state, such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 801 (quotation omitted). Requiring minimum contacts assures a defendant is not subject to suit as a result of "random," "fortuitous," or "attenuated" contacts, or as a result of the unilateral activity of a third person. Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003) (quotation omitted).

A federal district court may exercise either general or specific personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Plaintiffs present no evidence or argument that Auto-Owners is subject to general personal jurisdiction in Nevada. The Court therefore will consider only whether Auto-Owners is subject to specific personal jurisdiction in Nevada.

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155-56 (9th Cir. 2006). "If any of the three

requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." Pebble Beach Co., 453 F.3d at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." Id. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802.

Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. Pebble Beach Co., 453 F.3d at 1155-56. The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum. Id. In other words, the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm which the defendant knew was likely to be suffered in the forum state. Id. To satisfy the third element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient. Id. The "express aiming" requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000), modified by, Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006)

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action is measured in terms of "but for" causation. Id. at 1088. If the plaintiff establishes both

5

purposeful availment and "but for" causation, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quotation omitted).

To determine whether exercising jurisdiction would be reasonable, courts generally consider a variety of factors, such as:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Bancroft, 223 F.3d at 1086. A court must balance all seven factors and no factor is determinative. Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

Auto-Owners' policy[1] provides that-

> Any person seeking Uninsured Motorist Coverage must present a claim for compensatory damages according to the terms and conditions of the policy and conform with any applicable statute of limitations applying to bodily injury claims in the state in which the accident occurred.

(Pls.' Opp'n to Mot. to Dismiss, Ex. 21 (emphasis omitted).) The policy also provides that-

> While your automobile is subject to laws of another state or Canada, we will:
> a. Increase the Limit of Liability for Coverage to comply with the minimum requirements of a financial responsibility or compulsory insurance law of the jurisdiction where your automobile is being operated; and
> b. afford the minimum amounts for the types of mandatory coverages required by the jurisdiction where your automobile is being operated.

(Id., Ex. 22.)

///

---

[1] Neither Plaintiffs nor Defendant provided the Court with the entire policy at issue. Plaintiffs did not authenticate their exhibits, but Defendant did not object and did not dispute the admissibility of any of Plaintiffs' exhibits for purposes of this motion.

Auto-Owners purposefully agreed in Ouellet's policy to certain provisions that incorporated the applicable statute of limitations and mandatory minimum coverages for any state in which its insured drove. Auto-Owners thus not only foresaw and anticipated that its insured might get into an accident in Nevada, it specifically contracted with its insured over the minimum coverage and limitations period that would apply in such a situation. Plaintiffs have presented prima facie evidence that Auto-Owners purposefully availed itself of Nevada when it contractually agreed to provide Ouellet under-insured motorist coverage in Nevada. See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913-14 (9th Cir. 1990); Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court ex rel. County of Clark, 134 P.3d 710, 713-14 (Nev. 2006).

Plaintiffs also present prima facie evidence that their claims arise out of Auto-Owners' forum-related contacts. But for Auto-Owners' alleged breach of its promise to compensate its insured for injuries caused by an under-insured motorist in Nevada, and to adjust any such claim in good faith, this suit would not have arisen. See Farmers Ins. Exch., 907 F.2d at 914-15; Arbella Mut. Ins. Co., 134 P.3d at 714.

Finally, Defendant Auto-Owners has not presented a compelling case that the exercise of jurisdiction would be unreasonable. Auto-Owners voluntarily contracted to provide under-insured coverage in Nevada, and thus purposefully injected itself into the state. The first factor therefore favors Plaintiffs. Although it would be somewhat burdensome on Auto-Owners to litigate in Nevada, given modern advances in transportation, telecommunications, and the interstate practice of law, defending in the forum is less burdensome than it would have been in the past. Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007). This factor slightly favors Auto-Owners.

Auto-Owners contends the third factor weighs in its favor because conflicts of law "likely" exist between Nevada and Colorado, and Colorado law should control the dispute over the insurance policy at issue here because it was negotiated and executed in

Colorado. Auto-Owners does not identify an actual conflict in the law of the two states, however Plaintiffs appear to concede a conflict may exist, as Plaintiffs contend Colorado law is less favorable to insureds. Neither side has attempted to engage in a choice of law analysis. Even if Colorado law controls, Auto-Owners concedes this Court is capable of applying Colorado law. The burden rests with Auto-Owners to present a compelling case that exercising jurisdiction would be unreasonable. Its failure to analyze the choice-of-law issue and its potential impact on this factor compels the Court to deem this factor as neutral, at best. For the same reason, the Court will deem the fourth factor as neutral. If Nevada law applies, Nevada would have a substantial interest in the good faith adjustment of insurance claims in the forum.

The fifth factor primarily considers "where the witnesses and the evidence are likely to be located." Core-Vent Corp., 11 F.3d at 1489. Although the witnesses to the accident would be located in Nevada, most of the evidence and witnesses relating to Auto-Owners' alleged bad faith and unfair claims practices would be located in Michigan and Colorado. This factor weighs in favor of Auto-Owners.

As to the sixth factor, "'the plaintiff's convenience is not of paramount importance.'" Menken, 503 F.3d at 1061 (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1116 (9th Cir. 2002)). As Plaintiffs have retained Nevada counsel and are pursuing Gilman and Enumclaw in this suit as well, this factor, though not entitled to much weight, weighs in Plaintiffs' favor. Finally, alternative forums exist in Michigan and Colorado. This factor weighs in Auto-Owners' favor.

In sum, while some factors weigh in Auto-Owners' favor, others weigh in Plaintiffs' favor. Having purposefully and voluntarily contracted to provide its insured under-insured coverage in Nevada, Auto-Owners reasonably could have anticipated being haled into court in Nevada based on a claim that it failed to act in good faith in adjusting such a claim. Auto-Owners has failed to present a compelling case that the Court's exercise

of jurisdiction would be unreasonable.  The Court therefore will deny Defendant Auto-Owners' motion to dismiss for lack of personal jurisdiction.

**IV.  CONCLUSION**

      IT IS THEREFORE ORDERED that Defendant Auto-Owners' Motion to Dismiss (Doc. #10) is hereby DENIED.

DATED: April 28, 2011

                                                     _____
                                                     PHILIP M. PRO
                                                     United States District Judge