UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LOUIS VIGNOLA, individually; TAMARA HARLESS, as Special Administrator for the Estate of NANCY MARIE OUELLET; LOUIS VIGNOLA as Guardian ad Litem for CAROLYN VIGNOLA, a minor; and LOUIS VIGNOLA as Guardian ad Litem for GABRIEL VIGNOLA, a minor,<br><br>        Plaintiffs,<br><br>v.<br><br>CHARLES ALFRED GILMAN, JR.; AUTO-OWNERS INSURANCE COMPANY; MUTUAL OF ENUMCLAW INSURANCE COMPANY; DOES I-X AND ROE CORPORATIONS XI–XX, inclusive,<br><br>        Defendants. | 2:10-CV-02099-PMP-GWF<br><br><u>ORDER</u> |

Presently before the Court is Defendant Auto-Owners Insurance Company's Motion to Determine Applicable Law (Doc. #61), filed on January 3, 2012. Plaintiffs did not file a timely opposition. On January 30, 2012, the Court granted Defendant's Motion (Doc. #64), thereby applying Colorado law to Plaintiffs' claims.

On February 8, 2012, Plaintiffs filed a Motion for Reconsideration (Doc. #67) of the Court's Order on the Motion to Determine Applicable Law. On February 27, 2012, Defendant filed an Opposition (Doc. #72). On March 7, 2012, Plaintiffs filed a Reply (Doc. #78). On March 14, 2012, the Court granted Plaintiffs' Motion for Reconsideration (Doc. #81). Plaintiffs then filed an Opposition (Doc. #86) to Defendant's Motion to Determine

Applicable Law on March 28, 2012.  On April 6, 2012, Defendant filed a Reply (Doc. #88).

**I. BACKGROUND**

On or about May 24, 2010, Nancy Marie Ouellet ("Ouellet") applied for, negotiated, and purchased a motorcycle insurance policy from Defendant Auto-Owners Insurance Company ("Auto-Owners"), a Michigan corporation with its principal place of business in Michigan, which is licensed to do business in Colorado.  (Def.'s Mot. to Determine Applicable Law ("Mot. to Det.") (Doc. #61), Ex. A ¶ 2-4, Ex. A-1.)  Auto-Owners is not licensed to do business in Nevada, nor does Auto-Owners underwrite insurance in Nevada.  (Mot. to Det., Ex. A ¶ 4.)  Ouellet purchased the insurance policy through an independent insurance agency, Don Bates Insurance, located in Colorado.  (Id. ¶ 2, 5, Ex. A-1.)  At the time she obtained the policy, Ouellet resided in Colorado.  (Mot. to Det., Ex. A ¶ 5, Ex. A-1.)  The policy was negotiated, purchased, executed, and issued in Colorado.  (Mot. to Det., Ex. A ¶ 6.)  The policy provided under-insured motorist benefits of $500,000 per person/per occurrence.  (Mot. to Det., Ex. A-2.)  Ouellet's motorcycle was licensed in Colorado.  (Mot. to Det., Ex. A-3.)

On June 22, 2010, Ouellet was traveling on US 93 in Nevada when Defendant Charles Gilman's ("Gilman") automobile struck her motorcycle.  (Id.)  Ouellet resided in Colorado at the time of the accident, and none of the Plaintiffs ever resided in Nevada.  (Mot. to Det., Ex. A ¶ 14, Ex. A-3.)  As a result of the accident, Ouellet suffered serious injuries and died.  (Mot. to Det., Ex. A-3.)  Don Bates Insurance filed an Automobile Loss Notice with Auto-Owners on Ouellet's behalf on July 7, 2010.  (Mot. to Det., Ex. A-4.)  The Notice listed Plaintiff Louis Vignola ("Vignola") as the policy "Contact" at a Colorado address.  (Id.)  From July 7, 2010 to August 19, 2010, Auto-Owners's Colorado office communicated with Vignola regarding the claim.  (Mot. to Det., Ex. A ¶¶ 11-13; Pls.' Opp'n to Mot. to Det. ("Opp'n") (Doc. #86), Exs. 5-7.)  Vignola and Ouellet's two children (collectively "Plaintiffs") hired counsel in Nevada, and on August 9, 2010, Plaintiffs'

2

counsel instructed Auto-Owners to direct all communications to Plaintiffs' counsel in Las Vegas, Nevada.  (Opp'n, Exs. 5-6.)

Plaintiffs filed a Complaint in the Eighth Judicial District Court of Clark County, Nevada on November 2, 2010.  (Notice of Removal (Doc. #1), Ex. A.)  Plaintiffs alleges that Auto-Owners refused to settle Plaintiffs' claims and failed to reasonably and promptly evaluate their claims.  (Id. ¶¶ 18-19.)  Plaintiffs brought suit against Auto-Owners for bad faith, unfair claims practices in violation of Nevada Revised Statutes § 686A.310, and contractual claims.  (Opp'n at 3.)  Auto-Owners removed the case to this Court on December 2, 2010.  (Notice of Removal.)

Auto-Owners now seeks a determination of which state's law, Nevada or Colorado, applies to Plaintiffs' claims against Auto-Owners in this action.  Auto-Owners identifies three conflicts of law between Nevada and Colorado.  First, unlike in Nevada, there is no private right of action for violation of the Unfair Claims Practices Act in Colorado.  Second, unlike in Nevada, in Colorado the insured must seek to recover first from the under-insured tortfeasor before the insured can bring suit against the insurer.  Third, unlike in Nevada, Colorado law provides a statutory cap on non-economic damages in bad faith actions. Auto-Owners contends that the substantial relationship test applies to Plaintiffs' claims against Auto-Owners, and because Colorado has a substantial relationship to the claims against Auto-Owners, Colorado law should apply.

Plaintiffs respond that their bad faith and unfair claims practices claims are torts, and because these torts arise out of the accident that occurred in Nevada, the most significant relationship test from § 146 of the Second Restatement on Conflicts of Law applies. The general rule under § 146 is that the law of the state where the injury occurred applies unless another state has a more significant relationship to the claims.  Plaintiffs argue Nevada is the place of injury and Colorado does not have a more significant relationship to the claims.  Therefore, Plaintiffs argue, Nevada law should apply to

3

Plaintiffs' claims of bad faith and unfair claims practices. But Plaintiffs distinguish between their bad faith and unfair claims practices claims and their contractual claims. Although Plaintiffs do not articulate the nature of their contractual claims, Plaintiffs concede that Colorado law would apply to Plaintiffs' contractual claims.

Auto-Owners reply that all of Plaintiffs' claims against Auto-Owners are contractual because they relate to Auto-Owners' alleged refusal to pay insurance benefits under the insurance contract and not to the causation of the accident. Additionally, Auto-Owners acknowledges that a bad faith refusal to pay insurance benefits can be considered a tort and thus the most significant relationship test would apply. But Auto-Owners concludes that even under the most significant relationship test, Colorado law applies.

## II. DISCUSSION

Federal courts sitting in diversity apply the forum state's choice of law rules to determine applicable substantive law. Narayan v. EGL, Inc., 616 F.3d 895, 898 (9th Cir. 2010). In Nevada, the most significant relationship test, as set forth in § 145 of the Second Restatement of Conflicts of Law, governs tort actions. Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 145 applies to tort actions "unless another, more specific section of the Second Restatement applies to the particular tort." Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark, 134 P.3d 111, 116 (Nev. 2006). The

Second Restatement specifically addresses personal injury actions, and thus the most significant relationship test, as set forth in § 146, applies to personal injury actions. Section 146 of the Second Restatement states:

> In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The Second Restatement defines "personal injury" as "either physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another." Restatement Second of Conflicts of Law § 146 cmt. b. Both § 145 and § 146 incorporate the following principles from § 6:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

By contrast, the substantial relationship test governs contract claims in Nevada. Consol. Generator-Nevada, Inc. v. Cummins Engine Co., 971 P.2d 1251, 1253 (Nev. 1998). The Court should consider the following factors in determining which state has a substantial relationship to the contract:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

971 P.2d at 1253-54 (citations omitted).

///

Here, Plaintiffs bring suit against Auto-Owners for bad faith, unfair claims practices in violation of Nevada Revised Statutes § 686A.310, and contractual claims.  The parties agree that the substantial relationship test applies to Plaintiffs' contractual claims, and under that test, Colorado law applies.  But the parties disagree over which test applies to Plaintiffs' claims for bad faith and unfair claims practices: (1) the most significant relationship test under § 146, (2) the most significant relationship test under § 145, or (3) the substantial relationship test.  This determination turns on whether Plaintiffs' claims for bad faith and unfair claims practices are tort or contract claims.

The most significant relationship test from § 146 does not apply because neither claim is a personal injury tort.  Specifically, Plaintiffs' claims for bad faith and unfair claims practices are not claims of "physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another."  Restatement Second of Conflicts of Law § 146 cmt. b.  However, the most significant relationship test from § 145 applies to Plaintiffs' bad faith claim because Nevada recognizes a cause of action in tort for bad faith refusal to pay insurance benefits.  See U.S. Fid. & Guar. Co. v. Peterson, 540 P.2d 1070, 1071 (Nev. 1975).  But it is unclear whether under Nevada law Plaintiffs' claim of unfair claims practices is a tort or contract claim.  Therefore, the Court will apply both the most significant relationship test from § 145 and the substantial relationship test to Plaintiffs' claims against Auto-Owners.

Section 145 instructs the Court to consider the contacts listed in § 145(2) in evaluating the § 6 principles.  Although Nevada is the place of the personal injury upon which Plaintiffs' claims against Auto-Owners are based, the injury for which Plaintiffs seek relief against Auto-Owners is the alleged mis-handling of Plaintiffs' injury claim.  Despite the fact that Plaintiffs' counsel is based in Nevada, Auto-Owners' Colorado office handled Plaintiffs' claim, thus the conduct and the injury occurred in Colorado.  See Restatement Second of Conflicts of Law § 145(2)(a)-(b).  Ouellet resided in Colorado, Vignola resides in

Colorado, and Auto-Owners is licensed to do business in Colorado.  See id. § 145(2)(c). Lastly, the parties' relationship is centered in Colorado because Ouellet applied for, negotiated, and entered into the insurance contract in Colorado; Ouellet's motorcycle was licensed in Colorado; Ouellet's insurance agent, Don Bates, is located in Colorado; and Auto-Owners's Colorado office handled Plaintiffs' claim.  See id. § 145(2)(d).  The fact that Plaintiffs' counsel communicated with Auto-Owners's Colorado office from Nevada, does not alter this conclusion.  In short, all four of the contacts listed in § 145(2) suggest that Colorado has the most significant relationship to Plaintiffs' claims against Auto-Owners.

These contacts inform the § 6 analysis.  First, given the volume of contacts with Colorado, the needs of the interstate and international systems are best satisfied by applying Colorado law.  Second, although Nevada, as the forum state, has an interest in resolving disputes over an accident that occurred in Nevada, the injury at issue here is not Ouellet's death, it is the alleged mis-handling of Plaintiffs' insurance claim, which occurred in Colorado.  Thus, Nevada's interests in the claims against Auto-Owners are minimal.  Third, Colorado has significant interests in resolving the claims for bad faith and unfair claims practices—which occurred in Colorado, between residents of Colorado and a company licensed to do business in Colorado and arose out of a contract executed in Colorado. Fourth, having negotiated and executed the insurance contract in Colorado, the parties may have justifiably expected that Colorado law would govern disputes relating to the contract. Fifth, although Nevada law is arguably more favorable to the insured, both bodies of law impose duties and provide protections for parties to an insurance contract.  Sixth, applying Colorado law to a contract executed in Colorado enhances certainty, predictability, and uniformity of result for the contracting parties.  Seventh, there is no significant difference in the ease of determination and application of Nevada and Colorado law to Plaintiffs' claims. Therefore, Colorado law applies to Plaintiffs' claims of bad faith and unfair claims practices

under the most significant relationship test as set forth in § 145.

Similarly, Colorado law applies to Plaintiffs' claims against Auto-Owners under the substantial relationship test. Ouellet and Auto-Owners entered into the contract for motorcycle insurance in Colorado. Don Bates Insurance negotiated the contract with Auto-Owners on Ouellet's behalf in Colorado. The insurance policy was issued in Colorado while Ouellet resided in Colorado; thus, the contract was performed in Colorado. The subject matter of the contract was Ouellet's motorcycle, which was licensed in Colorado. Finally, Ouellet resided in Colorado and Auto-Owners was licensed to do business in Colorado. Although Plaintiffs argue that Nevada law should apply because Plaintiffs brought suit in Nevada and hired a Nevada attorney, the state where Plaintiffs brought suit and the location of Plaintiffs' counsel are not factors in the substantial relationship test. Accordingly, the Court will apply Colorado law to Plaintiffs' bad faith, unfair claims practices, and contractual claims against Auto-Owners.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Auto-Owners Insurance Company's Motion to Determine Applicable Law (Doc. #61) is hereby GRANTED.

DATED: April 13, 2012

_____
PHILIP M. PRO
United States District Judge

8