UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LOUIS VIGNOLA, individually and as guardian ad litem on behalf of CAROLYN VIGNOLA AND GABRIEL VIGNOLA, and TAMARA HARLESS, Special Administrator on behalf of ESTATE OF NANCY MARIE OUELLET, | ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CHARLES ALFRED GILMAN, JR.; AUTO-OWNERS INSURANCE COMPANY; AND MUTUAL OF ENUMCLAW INSURANCE COMPANY, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

2:10-CV-02099-PMP-GWF

ORDER

Presently before the Court is Plaintiffs' Motion for Summary Judgment (Doc. #95), filed on May 8, 2012. Plaintiffs filed an Errata (Doc. #100) on May 23, 2012. Defendant Auto-Owners Insurance Company filed an Opposition (Doc. #105) on June 1, 2012. Plaintiffs filed a Reply (Doc. #111) on June 15, 2012.

Also before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. #97), filed on May 9, 2012. Defendant Charles Gilman, Jr. filed an Opposition (Doc. #101) on May 29, 2012. Defendant Auto-Owners Insurance Company filed an Opposition (Doc. #102) on May 29, 2012. Plaintiffs filed Replies (Doc. #107, #108) on June 7, 2012.

Also before the Court is Defendant Auto-Owners Insurance Company's Cross-Motion for Summary Judgment (Doc. #98), filed on May 10, 2012. Plaintiffs filed an Opposition (Doc. #103) on June 1, 2012. Defendant Auto-Owners Insurance Company

filed a Reply (Doc. #110) on June 14, 2012.

Also before the Court is Plaintiffs' Motion to Certify Question to the Supreme Court of Colorado (Doc. #109), filed on June 12, 2012.  Defendant Auto-Owners Insurance Company filed an Opposition (Doc. #113) on June 27, 2012.  Plaintiffs filed a Reply (Doc. #117) on July 6, 2012.

Also before the Court is Defendant Auto-Owners Insurance Company's Request for Hearing (Doc. #114), filed on June 28, 2012.  Plaintiffs filed an Opposition (Doc. #115) on July 6, 2012.  Defendant Auto-Owners Insurance Company filed a Reply (Doc. #118) on July 16, 2012.

**I. BACKGROUND**

This case arises out of a June 22, 2010 automobile accident caused by Defendant Charles Gilman ("Gilman"), which resulted in the death of Nancy Ouellet ("Ouellet") and the destruction of the motorcycle she was riding.  (Def. Auto-Owners' Cross-Mot. Summ. J. (Doc. #98), Ex. A ["Hart Aff."] at 2; Stip. of Liability (Doc. #76).)  Plaintiffs are Ouellet's heirs and estate representative.  (Pet. for Removal (Doc. #1), Ex. A; Hart Aff., Ex. A-1.)

At the time of the accident, Ouellet was insured by Defendant Auto-Owners Insurance Company ("Auto-Owners").  (Hart Aff. at 2.)  Ouellet's policy with Auto-Owners provided underinsured motorist ("UIM") coverage with limits of $500,000.  (Id.)

On August 9, 2010, Plaintiffs' counsel sent Auto-Owners a letter advising that the law firm was representing Ouellet's heirs and estate, and offering to settle for the UIM policy limits.  (Hart Aff., Ex. A-1.)  The letter acknowledged a prior offer by Auto-Owners to settle the property damage to Ouellet's motorcycle for $2,500, but Plaintiffs' counsel requested Auto-Owners confirm the policy limits for property damage, as Ouellet's motorcycle was worth substantially more than $2,500.  (Id.)

On August 20, 2010, Auto-Owners responded by providing the declarations page from Ouellet's policy showing $500,000 UIM and $2,500 property damage limits.  (Hart

Aff., Ex. A-2.)  Auto-Owners declined to tender UIM policy limits, indicating that Auto-Owners needed additional information, such as documentation establishing that Plaintiff Louis Vignola was the representative of Ouellet's estate; that Gilman was responsible for the accident; the limits of Gilman's liability insurance; whether Louis Vignola was still married to Ouellet at the time of her death; the age of Ouellet's children, Plaintiffs Carolyn and Gabriel Vignola; and Ouellet's wage information.  (Id.)  Auto-Owners indicated it was seeking to obtain Ouellet's application for insurance to verify the $2,500 property damage limits.  (Id.)

On September 7, 2010, Plaintiffs' counsel sent Auto-Owners a letter which included an attachment showing Gilman's limits of liability were $100,000 and a marriage certificate for Louis Vignola and Ouellet.  (Hart Aff., Ex. A-3.)  The letter also provided the birth dates for Carolyn and Gabriel Vignola.  (Id.)  Plaintiffs' counsel stated that payment of the UIM benefits was "overdue."  (Id.)  On September 14 and 23, 2010, Plaintiffs' counsel sent Auto-Owners two more letters claiming payment was overdue.  (Hart Aff., Exs. A-4, A-5.)

On September 27, 2010, Gilman's insurer offered to settle Plaintiffs' claim against Gilman for the $100,000 policy limits for wrongful death under Gilman's policy. (Hart Aff., Ex. A-6.)  Gilman's insurer also offered to pay $16,388.64 for property damage to the destroyed motorcycle.  (Id.)  Plaintiffs did not accept this offer.  (Def. Auto-Owners' Cross-Mot. Summ. J., Ex. B.)

On September 29, 2010, Auto-Owners responded to Plaintiffs' counsels' prior letters demanding payment of the UIM benefits.  (Hart Aff., Ex. A-7.)  Auto-Owners acknowledged receiving proof of Gilman's limits of liability and confirmed that Ouellet's policy insured only $2,500 in property damage.  (Id.)  Auto-Owners thus offered to settle the property damage claim for $2,500.  (Id.)

///

3

1    Auto-Owners also indicated that it needed to determine who was entitled to

2 payments of any coverage under Ouellet's policy once UIM benefits were triggered.  (Id.)

3 However, Auto-Owners denied it delayed payment in this matter, stating that UIM benefits

4 had not yet been triggered because Gilman's liability limits had not been exhausted by

5 judgment or settlement.  (Id.)  Auto-Owners cited to section 2.e of Ouellet's policy, which

6 reads as follows:

> With regard to an underinsured automobile, there is no coverage under
> this endorsement until the limits of liability of all bodily injury liability
> bonds and insurance policies applying to the underinsured automobile
> and its operator have been exhausted by payment of judgments or
> settlements.

10 (Id. (emphasis omitted).)

11    Auto-Owners also reiterated that it needed to determine who had authority to act

12 on behalf of Ouellet's estate and her children to ensure payment to the proper parties once

13 the UIM benefits were triggered.  (Id.)  Auto-Owners indicated it could not rely on a

14 Canadian Automatic Oath Statement designating Louis Vignola as the representative of

15 Ouellet's estate because Auto-Owners could not be sure of the statement's authenticity or

16 its applicability in the United States.  (Id.)  Auto-Owners thus requested proof as to the

17 court-appointed personal representative of Ouellet's estate and court approval of any

18 guardian or settlement authority for Ouellet's children.  (Id.)  Auto-Owners also requested

19 clarification as to whether Ouellet and Louis Vignola were still married at the time of the

20 accident, as Louis Vignola had described himself as Ouellet's ex-husband and the death

21 certificate indicated Ouellet was divorced.  (Id.)  Auto-Owners also asked for confirmation

22 of Ouellet's wages.  (Id.)

23    On October 5, 2010, Plaintiffs' counsel responded and requested a copy of the

24 entire policy, rather than excerpted provisions. (Hart Aff., Ex. A-8.)  Counsel also indicated

25 they already had provided the marriage certificate, death certificate, and Automatic Oath

26 Statement.  (Id.)  Counsel contended this information was sufficient to evaluate the claim,

4

but requested further direction if more information was needed.  (Id.)

Auto-Owners responded on October 13, 2010, indicating that if Ouellet was making approximately $120,000 as Plaintiffs' counsel previously had represented, then the UIM policy limits would be implicated.  (Id.)  Auto-Owners thus requested documentation of Ouellet's wages.  (Id.)  Auto-Owners again asserted that UIM benefits were not triggered under Ouellet's policy unless and until Gilman's liability limits were exhausted through judgment or settlement.  (Id.)  Auto-Owners indicated that the only issue that would remain once UIM coverage was triggered was to whom benefits should be paid, an issue that was unclear given uncertainty about Ouellet's marital status, who was the estate's personal representative, and who had settlement authority for the children.  (Id.)

The parties thereafter exchanged a series of letters in which they disputed the promptness of Auto-Owners' response and the completeness of information provided by Plaintiffs' counsel.  (Id.)  Auto-Owners ultimately paid the $500,000 UIM policy limits to Carolyn and Gabriel Vignola on January 23, 2012.  (Hart Aff. at 3.)  At the time the summary judgment motions were filed, Plaintiffs had not reached a settlement or obtained a judgment against Gilman, although the parties stipulated as to Gilman's liability, and only the question of damages remains as to Defendant Gilman.  (Def. Auto-Owners' Cross-Mot. Summ. J., Ex. B; Stip. of Liability.)

Plaintiffs now move to amend their Complaint to add Colorado statutory claims following this Court's ruling that Colorado law applies in this action.  Plaintiffs also move to add a claim against Gilman for enforcement of a purported settlement of the property damage claim.  Plaintiffs move for summary judgment on their claims against Auto-Owners, contending Auto-Owners breached the policy and acted in bad faith by failing to promptly pay UIM benefits.

Defendant Gilman opposes amendment, arguing amendment is untimely and the Court already has resolved the issue regarding the purported settlement of the property

1  damage claim.  Defendant Auto-Owners also opposes both of Plaintiffs' motions and cross-

2  moves for summary judgment.  Auto-Owners contends that amendment is untimely and

3  would be futile.  Auto-Owners also argues it is entitled to summary judgment because under

4  section 2.e of Ouellet's policy, UIM benefits were not triggered until Gilman's limits of

5  liability were exhausted by judgment or settlement, a condition which still has not been

6  satisfied.

7  **II.  PLAINTIFFS' MOTION TO AMEND COMPLAINT (Doc. #97)**

8          Where a party seeks to amend a pleading after the pretrial scheduling order's

9  deadline for amending the pleadings has expired, the moving party must satisfy the stringent

10  "good cause" standard under Federal Rule of Civil Procedure 16, not the more liberal

11  standard under Rule 15(a).  AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946,

12  952 (9th Cir. 2006); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08

13  (9th Cir. 1992) (noting once a district court files a pretrial scheduling order under Rule 16

14  establishing a timetable for amending pleadings, that rule's standards control).  Unlike Rule

15  15(a)'s liberal amendment policy, which focuses on undue delay and prejudice to the other

16  party, Rule 16(b)'s "good cause" standard centers on the moving party's diligence.

17  Johnson, 975 F.2d at 609.  A "district court may modify the pretrial schedule 'if it cannot

18  reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting

19  Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).  "[C]arelessness is not

20  compatible with a finding of diligence and offers no reason for a grant of relief" under Rule

21  16.  Id.

22          If the moving party satisfies the good cause standard under Rule 16, then the

23  Court will examine whether the amendment is proper under Rule 15(a).  Id. at 607-08.

24  Under Rule 15(a), a plaintiff generally may amend his or her complaint once "as a matter of

25  course" within twenty-one days after serving it, or twenty-one days after service of a

26  responsive pleading or motion.  In all other cases, a party may amend its pleading only by

leave of court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").

        The Court considers five factors in deciding whether to grant leave to amend under Rule 15(a): "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).  Delay alone does not suffice to deny amendment, but it is a relevant factor to consider, particularly where the party moving to amend provides no explanation for the delay.  Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999).  The futility analysis considers whether the proposed amendment would survive a challenge of legal insufficiency under Federal Rule of Civil Procedure 12(b)(6).  Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).  Whether to grant leave to amend lies within the Court's discretion, and the Court "does not err in denying leave to amend where the amendment would be futile." Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009).

        In this case, the last day to amend the pleadings was ninety days prior to the close of discovery.  (Order (Doc. #34) at 2.)  The last date to complete discovery was May 9, 2012.  (Order (Doc. #81) at 2.)  Plaintiffs filed the present Motion to Amend on May 9, 2012.  Plaintiffs' Motion therefore is untimely under the Scheduling Order, and Plaintiffs must satisfy Rule 16's good cause standard as well as Rule 15(a)'s more liberal standard for the Court to grant leave to amend as to any particular claim.[1]

///

---

[1] On April 26, 2012, the Magistrate Judge stayed discovery in this matter pending resolution of anticipated summary judgment motions.  (Order (Doc. #93).)  However, by that point, the deadline to amend pleadings already had expired.

**A.  Amendments as to Auto-Owners**

Defendant Auto-Owners argues the Court should deny leave to amend because the proposed amended complaint contains claims under Nevada law which would be futile given the Court's prior ruling that Colorado law applies.  Auto-Owners also argues Plaintiffs' proposed Colorado statutory claims would be futile because Auto-Owners would be entitled to judgment as a matter of law on those claims.  Auto-Owners further contends any allegations regarding stacking benefits under Ouellet's policy would be futile because Plaintiffs are not entitled to stacking under Colorado law or the policy.  Auto-Owners argues amendment to add allegations regarding UIM coverage under Ouellet's umbrella policy would be futile because the umbrella policy does not provide for UIM coverage.  Finally, Auto-Owners argues Plaintiffs unduly delayed moving for amendment and Auto-Owners will be prejudiced because discovery will have to be reopened and Auto-Owners will have to incur additional expense to defend against these newly asserted claims.

Plaintiffs respond they have reasserted the Nevada state law claims to preserve those claims for appeal.  Plaintiffs also argue that their Colorado statutory claims are not futile and they did not unduly delay, as the Court held Colorado law applied shortly before Plaintiffs moved to amend.  Plaintiffs assert they are entitled to stack benefits because Ouellet paid separate premiums for each vehicle under her policy.  Finally, Plaintiffs contend the umbrella policy is ambiguous as to whether it covers UIM benefits, and it would be premature to preclude such a claim.

1.  Nevada Claims

In the proposed second amended complaint, Plaintiffs refer to violations of Nevada state law.  (Proposed Second Am. Compl. at 8-9.)  Plaintiffs have clarified that they do not seek to resurrect Nevada state law claims following this Court's Order (Doc. #90) that Colorado law applies to this action.  Rather, Plaintiffs contend they are preserving the Nevada law claims and the claims against previously-dismissed Defendant Mutual of

8

Enumclaw Insurance Company for appeal.  With this understanding, the Court will not deny amendment on this basis.

## 2.  Colorado Revised Statutes § 10-3-1115 Claim

In the proposed second amended complaint, Plaintiffs seek to add allegations that Defendant Auto-Owners violated Colorado Revised Statutes § 10-3-1115.  (Pls.' Mot. for Leave to Am. Compl. (Doc. #97), Ex. 1 ["Proposed Second Am. Compl."] at 11.)  As discussed below, Plaintiffs' Colorado statutory claim is not futile.  Additionally, Plaintiffs have good cause for failing to meet the scheduling order deadline and did not unduly delay in moving to amend to add this claim.  The Court entered an Order (Doc. #90) determining that Colorado law applied on April 13, 2012, after the deadline to amend pleadings already had expired.  Plaintiffs moved to amend to add claims under Colorado law less than a month later.  Defendant Auto-Owners will not be prejudiced because the Colorado statutory claim relies on the same factual predicate and similar legal theories as the breach of contract and bad faith claims.  Auto-Owners has not identified any new discovery it would need to conduct to address this claim.  The Court therefore will grant leave to amend to add the Colorado statutory claim under § 10-3-1115.

## 3.  Colorado Consumer Protection Act Claim

In the proposed second amended complaint, Plaintiffs allege a claim under the Colorado Consumer Protection Act ("CCPA").  (Proposed Second Am. Compl. at 12.) Specifically, Plaintiffs allege Auto-Owners' "unreasonable conduct in investigating and delaying payment on the Vignola Plaintiffs' claims is a deceptive trade practice . . . in violation of C.R.S. § 6-1-105," entitling Plaintiffs to three times damages plus attorney's fees and costs under Colorado Revised Statutes § 6-1-113.  (Id.)

In its Opposition to Plaintiffs' Motion to Amend and Cross-Motion for Summary Judgment, Defendant Auto-Owners contends amendment would be futile because it is entitled to judgment as a matter of law on this claim as it did not engage in any deceptive

practices, the proposed second amended complaint fails to allege a public impact, and the proposed second amended complaint fails to allege a specific violation of § 6-1-105. Plaintiffs respond by incorporating arguments made in Plaintiffs' Motion for Summary Judgment.  In their Motion, Plaintiffs argue the CCPA applies to insurance companies who engage in deceptive practices.  Additionally, as to the public impact, Plaintiffs assert that "[i]t is reasonable to assume that [Auto-Owners' reliance on section 2.e of the policy] will expose future customers to these same unfair practices."  (Pls.' Mot. Summ. J. (Doc. #95) at 30.)  In their Opposition to Auto-Owners' Cross-Motion, Plaintiffs also argue Auto-Owners cites inapplicable law to contend that Plaintiffs must allege a specific violation of § 6-1-105.

As with Plaintiffs' other Colorado statutory claim, Plaintiffs have demonstrated good cause to for failing to meet the scheduling order deadline and did not unduly delay in moving to amend.  However, the Court will deny amendment as futile.  Colorado Revised Statutes § 6-1-105 makes unlawful certain deceptive trade practices.  Section 6-1-113(1)(a) provides for a private right of action for consumers injured as a result of the defendant's deceptive practices.  To establish a CCPA claim, a plaintiff must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice;
> (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
> (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
> (5) that the challenged practice caused the plaintiff's injury.

Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003) (en banc) (quotation omitted).

Under the third element, private wrongs which do not affect the public cannot support an actionable CCPA claim.  Brodeur v. Am. Home Assur. Co., 169 P.3d 139, 155 (Colo. 2007) (en banc).  Considerations affecting whether a challenged practice has a public

impact include "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future." Id. "[I]t is not enough that the defendant's industry affects the public interest." Id. Rather, "the challenged practice must significantly impact the public." Id. at 156 (emphasis omitted).

Here, Plaintiffs have alleged no facts in the proposed second amended complaint supporting the public impact element of a CCPA claim. Plaintiffs do not include allegations regarding the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the affected consumers affected, or that the challenged practice previously impacted other consumers or has significant potential to do so in the future. Plaintiffs do not cite to any factual allegation in the proposed second amended complaint from which a reasonable inference of public impact could be drawn.

Moreover, Plaintiffs moved for summary judgment on this claim yet presented no evidence, admissible or otherwise, which would raise an issue of fact on this element. Discovery in this action is closed, Plaintiffs have not moved to reopen discovery, and Plaintiffs presumably would have included any evidence they had to support this claim in their Motion for Summary Judgment or their Opposition to Auto-Owners' Cross-Motion for Summary Judgment. Plaintiffs have presented nothing beyond an unsupported statement in their Motion for Summary Judgment that "[i]t is reasonable to assume" a public impact. (Pls.' Mot. Summ. J. (Doc. #95) at 30.) However, the fact that Plaintiffs and Auto-Owners dispute the law and its impact on Ouellet's policy "does not necessarily mean that other members of the public are or have been affected by the insurer's practices. The practice complained of by the insured may be an individualized response to that insured's claim." Brodeur, 169 P.3d at 156. Accordingly, the Court will deny amendment to add these allegations, as Plaintiffs' proposed CCPA claim would be futile.

4.  Stacking Claim

In the proposed second amended complaint, Plaintiffs seek to add allegations that Ouellet was insured for $500,000 in UIM benefits for each of five vehicles, and that these coverages stack such that UIM coverage amounted to a total of $2.5 million under the Policy.  (Proposed Second Am. Compl. at 7-8.)  The parties dispute whether a stacking claim is futile.

Plaintiffs do not explain why they failed to assert a stacking claim prior to this proposed amendment.  Plaintiffs therefore have not shown good cause to amend the scheduling order to allow this late amendment.  Moreover, any such amendment would be futile.  Pursuant to Colorado Revised Statutes § 10-4-609(1)(c), "[a] single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a single premium covering multiple vehicles may be limited to applying once per accident."  Section 4.b of the UIM coverage in Ouellet's Policy provided for such a limitation:

> The limits of liability for this coverage may not be added to the limits for the same or similar coverage applying to other automobiles insured by this policy or other policies issued to you or your relatives by us or any affiliate of ours to determine the amount of coverage available for bodily injury sustained by any person in any occurrence regardless of the number of: (1) policies involved; (2) automobiles involved; (3) persons insured; (4) claims made or suits brought; (5) automobiles or premiums shown in the Declarations; or (6) premiums paid.

(Def. Auto-Owners' Ins. Co.'s Opp'n to Pls.' Mot. Summ. J. (Doc. #105), Ex. C ["Second Hart Aff."] at AUTO00063-64.)[2]  Although Ouellet paid separate premiums for liability, comprehensive, collision, and theft prevention on each of five vehicles, including the motorcycle involved in the accident, she paid a single premium in the amount of $288.19 for UIM coverage.  (Id. at AUTO00030-33.)  Stacking therefore is not available under her

---

[2]  Neither Plaintiffs nor Defendant Auto-Owners provided the policy or the relevant sections thereof in support of, or opposition to, the Motion to Amend Complaint.  The Court located the policy language elsewhere in the record.

policy's anti-stacking provision, nor is that policy provision contrary to Colorado law.  The Court will deny amendment to add these allegations, as Plaintiffs failed to show good cause to amend the scheduling order and any claim for stacking of benefits would be futile.

5.  Umbrella Policy Claim

In the proposed second amended complaint, Plaintiffs seek to add allegations that Ouellet purchased an umbrella insurance policy from Auto-Owners which included UIM coverage.  (Proposed Second Am. Compl. at 8.)  Plaintiffs argue the umbrella policy language is ambiguous as to whether UIM coverage is available.  Auto-Owners denies that any UIM coverage existed under the umbrella policy.

Plaintiffs have offered no explanation as to why they did not move to amend to add a claim under the umbrella policy earlier.  Plaintiffs therefore have not shown good cause to amend the scheduling order to allow this late amendment.  Moreover, it appears the claim likely is futile.  Neither Plaintiffs nor Auto-Owners provide the Court with the umbrella policy.  However, in Auto-Owners' Opposition to Plaintiffs' Motion for Summary Judgment, Auto-Owners presents sworn testimony from two of its employees that the umbrella policy Auto-Owners issued to Ouellet did not include UIM coverage.  (Second Hart Aff. at ¶¶ 12-13; Def. Auto-Owners' Ins. Co.'s Opp'n to Pls.' Mot. Summ. J. (Doc. #105), Ex. E.)  Plaintiffs have not presented any evidence in support of their Motion for Summary Judgment, Opposition to Auto-Owners' Cross-Motion for Summary Judgment, or Motion to Amend to rebut these assertions.  Further, Colorado law does not require umbrella policies to include UIM coverage.  See Apodaca v. Allstate Ins. Co., 232 P.3d 253, 258-59 (Colo. App. 2009).  The Court therefore will deny amendment to assert a claim for UIM benefits under the umbrella policy as Plaintiffs failed to show good cause to amend the scheduling order and any claim for umbrella policy coverage would be futile.

///

///

13

### B.  Amendment as to Gilman

In the proposed second amended complaint, Plaintiffs seek to add a claim for enforcement of a purported property settlement agreement between Defendant Gilman and Plaintiffs.  Defendant Gilman opposes amendment, arguing this Court already denied Plaintiffs' prior motion to enforce settlement, and in any event, the deadline to amend pleadings has passed.  Plaintiffs respond that the Court did not resolve the factual issues as to whether the parties had entered into a separate settlement regarding Ouellet's property damage, as opposed to her wrongful death damages.  Rather, Plaintiffs contend the Court declined to summarily rule in Plaintiffs' favor by enforcing the alleged separate property settlement.  Plaintiffs argue they did not unduly delay moving to amend to add this claim because the Court did not decide Plaintiffs' motion to enforce the settlement until March 14, 2012, and Plaintiffs reasonably decided to wait until after the Court also resolved the choice of law issue so as to amend only once.

On December 30, 2011, Defendant Gilman's insurer sent a letter to Plaintiffs' counsel offering to settle the wrongful death claims against Gilman for policy limits of $100,000 and to settle Plaintiffs' property damage claim for $25,000.  (Def. Gilman's Opp'n to Pls.' Mot. to Am. Compl. (Doc. #101), Ex. H.)  Plaintiffs allege in the proposed second amended complaint that Plaintiffs accepted the property damage portion of this offer on January 17, 2012.  (Proposed Second Am. Compl. at 5; see also Pls.' Mot. for Recons., to Enforce Property Damage Settlement, & to Extend Disc. Deadlines (Doc. #67), Ex. 2.)

Plaintiffs previously moved to enforce the purported settlement of the property damage claim.  (Pls.' Mot. for Recons., to Enforce Property Damage Settlement, & to Extend Disc. Deadlines (Doc. #67).)  Defendant Gilman opposed, contending that the $25,000 property damage settlement offer was part of a larger offer to settle the entire dispute between Gilman and Plaintiffs.  (Def. Charles Alfred Gilman's Limited Opp'n to Pls.' Mot. for Recons., to Enforce Property Damage Settlement, & to Extend Disc.

Deadlines (Doc. #73).)  The Court summarily denied Plaintiffs' request to enforce the purported settlement on March 14, 2012.  (Order (Doc. #81) at 2.)

Plaintiffs could have moved to amend to add this claim before the deadline to amend pleadings expired under the scheduling order.  Instead, Plaintiffs chose to file a motion to enforce the settlement.  Plaintiffs have not shown good cause to amend the scheduling order.  Moreover, it appears this claim likely is futile.  Plaintiffs allege in the proposed second amended complaint that Gilman offered to settle the property damage claim for $25,000 on December 30, 2011.  (Proposed Second Am. Compl. at ¶ 21.)  The December 30, 2011 letter[3] from Gilman's insurer to Plaintiffs unambiguously offers a global settlement of the wrongful death and property damage claims, not separate settlements, particularly when viewed in the context of prior letters where Gilman's insurer raises the settlement amount on the property damage claim in an effort to reach a global settlement on all claims.  (Def. Gilman's Opp'n to Mot. to Amend Compl. (Doc. #101), Exs. A-G.)  The Court therefore will deny amendment to add this claim.

**C. Summary**

The Court will grant Plaintiffs' Motion to Amend to add a claim pursuant to Colorado Revised Statutes § 10-3-1115.  Additionally, the Court will allow the amendment to include claims based on Nevada law with the understanding that amendment merely preserves these claims for appeal, and the claims are not hereby resurrected.  The Court denies leave to amend to add a CCPA claim, a stacking claim, a claim under Ouellet's umbrella policy, or a claim to enforce a purported property settlement with Gilman.

///

___

[3]  The Court may consider the December 30, 2011 letter in determining futility, as it is a document which forms the basis of Plaintiffs' proposed claim and Plaintiffs do not dispute its authenticity.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

### III.  MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Initially, the moving party bears the burden of proving there is no genuine issue of material fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial.  Id.  The Court views all evidence in the light most favorable to the non-moving party.  Id.  The Court considers only admissible evidence in ruling on a summary judgment motion, and "[a]uthentication is a condition precedent to admissibility." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (quotation omitted); Fed. R. Civ. P. 56(c).

### A.  Plaintiffs' Motion for Summary Judgment (Doc. #95)

Plaintiffs move for summary judgment on their original breach of contract and bad faith claims, as well as their proposed Colorado statutory and CCPA claims.  Defendant Auto-Owners argues Plaintiffs' Motion is not supported by admissible evidence, as Plaintiffs have failed to authenticate any exhibits supporting their Motion.  (Def. Auto-Owners' Opp'n to Pls.' Mot. Summ. J. (Doc. #105) at 22.)  Plaintiffs did not respond to this argument in their Reply, and they made no effort to authenticate the exhibits attached to their original Motion or the exhibits attached to their Reply.

///

///

16

Plaintiffs have failed to meet their initial burden under Rule 56 because they have failed to respond to this argument,[4] and they failed to submit any admissible evidence in support of their Motion.  Despite Defendant Auto-Owners putting Plaintiffs on notice that Plaintiffs' exhibits were not authenticated, Plaintiffs failed to respond to the argument and took no measures to authenticate their exhibits.  The Court therefore will deny Plaintiffs' Motion for Summary Judgment.  The Court also will deny Auto-Owners' request for attorney's fees contained in its Opposition to Plaintiffs' Motion for Summary Judgment. Auto-Owners presents no legal authority in support of its request.

**B.  Auto-Owners' Cross-Motion for Summary Judgment (Doc. #98)**

Defendant Auto-Owners moves for summary judgment on both the claims for breach of contract and bad faith brought in Plaintiffs' original Complaint, as well as the claim for violation of the Colorado claims practices statute which Plaintiffs seek to add in the proposed amended complaint.  Auto-Owners argues that under Colorado law and the policy, no UIM coverage existed under the policy because Gilman's liability limits were never exhausted through judgment or settlement.  Auto-Owners thus argues it did not breach the contract, act in bad faith, or violate the Colorado statute.  Auto-Owners further contends that its reliance on prior Colorado case law is at least fairly debatable and reasonable, and thus it could not have acted in bad faith or unreasonably denied coverage as a matter of law.

Plaintiffs respond that Auto-Owners relies on outdated Colorado law, as Colorado amended its UIM statute and prior case law is no longer applicable.  According to Plaintiffs, Colorado law now determines UIM benefits based on determining the limits of liability for the tortfeasor's insurance and the damages suffered by the insured.  If damages exceed the limits of liability, that amount is the UIM benefit due to the insured.  Plaintiffs

---

[4]   See LR 7-2(d).

contend that waiting for the insured to obtain a judgment or settlement against the tortfeasor no longer is required and is against Colorado public policy based on the change in the statute. Plaintiffs argue Auto-Owners' position is not fairly debatable, and even if it was, that defense would apply only to Plaintiffs' common law bad faith claim. Plaintiffs further contend Auto-Owners has taken inconsistent positions in this case by arguing UIM benefits were never owed yet Auto-Owners paid the Vignola children the UIM benefit policy limits, and the Court should judicially estop Auto-Owners from denying coverage exists.

Claims for breach of an insurance contract may arise where an insurer delays or refuses to make payment owed directly to its insured under a first-party insurance policy. Sanderson v. Am. Family Mut. Ins. Co., 251 P.3d 1213, 1217 (Colo. App. 2010); Goodson v. Am. Standard Ins. Co. of Wis., 89 P.3d 409, 414 (Colo. 2004). Colorado also provides a separate statutory claim against an insurer who unreasonably delays or denies payment of a claim. Colo. Rev. Stat. §§ 10-3-1115(1)(a), 10-3-1116(1); Vaccaro v. Am. Family Ins. Grp., 275 P.3d 750, 756 (Colo. App. 2012). Colorado law implies a covenant of good faith and fair dealing into every insurance contract. Sanderson, 251 P.3d at 1217. "This duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith." Id.

An insurer's denial of a valid claim constitutes bad faith if the plaintiff can show the insurer's conduct is unreasonable under the circumstances and the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. Herod v. Colo. Farm Bureau Mut. Ins. Co., 928 P.2d 834, 835-36 (Colo. App. 1996). An insurer is not obligated to negotiate a settlement where the insurer genuinely and reasonably disputes the amount due under the policy's terms. Vaccaro, 275 P.3d at 759. Further, "it is reasonable for an insurer to challenge claims that are fairly debatable." Id. (quotation omitted). An insurer's

1  position is not fairly debatable if it is contrary to the policy's plain language or "controlling

2  rules of law."  Geiger v. Am. Standard Ins. Co. of Wis., 192 P.3d 480, 483-84 (Colo. App.

3  2008).

4        If a reasonable jury could find the insurer's position was fairly debatable, "this

5  weighs against a finding that the insurer acted unreasonably."  Vaccaro, 275 P.3d at 759.

6  However, a finding that the insurer's position was fairly debatable standing alone does not

7  entitle the insurer to judgment as a matter of law on a bad faith claim.  Sanderson, 251 P.3d

8  at 1217-18.  Rather, "fair debatability is a necessary condition to avoid a claim of bad faith,

9  [but] it is not always a sufficient condition."  Id. at 1219 (quotation omitted).

10        The reasonableness inquiry is objective.  Id. at 1217.  "Thus, when an insurer

11  maintains a mistaken belief that a claim is not compensable, it may still be within the scope

12  of permissible challenge, even if the insurer's belief turns out to be incorrect."  Id.

13  However, "[t]he fact that an insurer eventually pays an insured's claim will not foreclose a

14  lawsuit based on the insurer's conduct prior to payment."  Id.

15        In Colorado, insurance contracts must comply with statutory requirements

16  regarding UIM coverage and with Colorado's public policy.  Radil v. Nat'l Union Fire Ins.

17  Co. of Pittsburgh, Pa., 207 P.3d 849, 852 (Colo. App. 2008) ("Terms contrary to statutory

18  provisions or in violation of public policy are void.").  Colorado previously defined by

19  statute the parameters of UIM benefits as follows:

20        The maximum liability of the insurer under the uninsured motorist
         coverage provided shall be the lesser of:

21              (a) The difference between the limit of uninsured
               motorist coverage and the amount paid to the insured by

22              or for any person or organization who may be held
               legally liable for the bodily injury; or

23              (b) The amount of damages sustained, but not recovered.

24  Colo. Rev. Stat. § 10-4-609(5) (2007).  Based on this statutory language, Colorado courts

25  previously have held that "until a recovery is made from the at-fault party, the actual

26  amount of coverage to which an insured is entitled under an UIM policy cannot be known,"

and insurer therefore "may require judgment or settlement from the underinsured driver as a precondition to a claim for UIM benefits without diluting, conditioning, or unduly limiting statutorily mandated UIM coverage." Freeman v. State Farm Mut. Auto. Ins. Co., 946 P.2d 584, 585-86 (Colo. App. 1997); see also Sanderson, 251 P.3d at 1220; Cork v. Sentry Ins., 194 P.3d 422, 428 (Colo. App. 2008). For that reason, prior case law holds that a policy requiring the insured to "recover first from the underinsured tortfeasor does not violate public policy." Freeman, 946 P.2d at 586.

However, in 2007, Colorado amended its UIM statute and deleted § 10-4-609(5). See 2007 Colo. Sess. Laws Ch. 413, § 2. Colorado statutory law now provides that:

> [UIM coverage] shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section. . . . The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.

Colo. Rev. Stat. § 10-4-609(1)(c) (2013). The amendments "apply to policies issued or renewed on or after" January 1, 2008. 2007 Colo. Sess. Laws Ch. 413, § 4.

Ouellet's policy was issued on June 21, 2010. (Def. Auto-Owners' Cross-Mot. Summ. J., Ex. A at 2.) Consequently, the amendments undisputably apply to her policy. However, the parties dispute the enforceability of the policy provision in section 2.e that the insured first must obtain judgment or settle with the underinsured motorist before the UIM benefit is triggered. Auto-Owners contends that Freeman and related cases are still good law and that the rationale supporting Freeman still exists under the amendments. Auto-Owners thus contends it did not breach the contract or act in bad faith as a matter of law. Auto-Owners further contends that even if it is incorrect on the law, its position is fairly debatable and thus it did not act in bad faith as a matter of law. Plaintiffs contend the statutory language unambiguously provides that UIM coverage is determined by the

difference between the limits of the tortfeasor's liability and the amount of damages, and thus once these two items are known, any further restriction on coverage is void as contrary to the statute and against Colorado public policy.  According to Plaintiffs, Auto-Owners' position that Plaintiffs must settle or obtain a judgment against Gilman breached the contract and constitutes bad faith.

Although several orders and opinions out of Colorado courts post-dating the amendments have followed <u>Freeman</u>, none of those cases involved policies to which the 2007 amendments applied.  <u>See</u> <u>Sanderson</u>, 251 P.3d at 1215 (accident in 2003); <u>Cork</u>, 194 P.3d at 424 (accident occurred some time before August 2003); <u>see also</u> <u>Zbegner v. Allied Prop. & Cas. Ins. Co.</u>, 455 Fed. Appx. 820, 821 (10th Cir. 2011) (accident in 2007); <u>Alarcon v. Am. Family Ins. Group</u>, No. 08-CV-01171-MSK-MJW, 2010 WL 2541131, at *1 (D. Colo. June 18, 2010) (unpublished) (accident in 2003); <u>Gosman v. State Farm Mut. Auto. Ins. Co.</u>, No. 06-CV-00688-WDM-CBS, 2008 WL 239571, at *1 (D. Colo. Jan 25, 2008) (unpublished) (accident in 2001).  Neither the Colorado Supreme Court nor any other Colorado court has addressed whether <u>Freeman</u> and its progeny remain good law with respect to an insurance policy to which the amendments apply.  The Court therefore must predict what Colorado would do.[5]  <u>Giles v. Gen. Motors Acceptance Corp.</u>, 494 F.3d 865, 872 (9th Cir. 2007).

The amended statutory language is plain and unambiguous.  <u>Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.</u>, 271 P.3d 587, 590 (Colo. App. 2011) (stating Colorado courts give effect to the plain and unambiguous language of a statute as written, "unless doing so leads to an absurd result").  Under the amended statutory

---

[5]  Plaintiffs request the Court certify questions to the Colorado Supreme Court.  Although this case raises novel issues of Colorado law, the Court declines to certify questions to the Colorado Supreme Court because the Court concludes the statute's plain and unambiguous language provides sufficient guidance to resolve the issues presented.  The Court therefore will deny Plaintiffs' Motion to Certify Question to the Colorado Supreme Court (Doc. #109).

language, the UIM benefit is determined by the difference between the amount of the limits of the underinsured driver's liability coverage and the amount of the damages sustained. Additionally, the insurer is not entitled to set off any amount recovered from another source, including any recovery from the tortfeasor or the tortfeasor's insurer.  Thus, unlike the prior Colorado statute, it is irrelevant whether and in what amount the insured recovers from the underinsured motorist for policies subject to the 2007 amendments.  Under the prior law, the amount of UIM coverage could not be determined until judgment against or settlement with the underinsured motorist because the statute expressly "limit[ed] the insurer's liability to providing UIM coverage to an amount equal to the gap between the amount an insured receives from an underinsured driver and the insured's UIM policy limits." Freeman, 946 P.2d at 585.  Now, however, the relevant gap in coverage is between the underinsured driver's limits of liability and damages sustained.  An insured need not obtain judgment or settlement to establish the underinsured driver's limits of liability and the insurer is not entitled to set off any amount obtained from the underinsured driver or his insurer.  Consequently, the rationale supporting Freeman no longer applies and the Court concludes the Colorado Supreme Court would hold Freeman and its progeny are not controlling authority with respect to insurance policies to which the 2007 amendments apply.

Moreover, the Court predicts that based on the plain and unambiguous statutory language, the Colorado Supreme Court would declare as void and unenforceable an insurance policy provision conditioning UIM coverage on judgment or settlement with the underinsured driver if the policy is subject to the 2007 amendments.  Such a policy provision is contrary to the statute's plain and unambiguous language and it "attempts to dilute, condition, or unduly limit statutorily mandated coverage." Freeman, 946 P.2d at 585.

///

Because Auto-Owners relies on an unenforceable policy provision to contend it did not breach the policy, Auto-Owners has failed to meet its initial burden of establishing it is entitled to judgment as a matter of law.  The Court therefore will deny Auto-Owners' Cross-Motion for Summary Judgment on Plaintiffs' breach of contract claim.

Further, even if a reasonable jury could find Auto-Owners' position was fairly debatable, that would only raise an issue of fact in Auto-Owners' favor to avoid summary judgment against it on Plaintiffs' bad faith claim.  Given the plain and unambiguous statutory language, Auto-Owners has not met its initial burden of establishing no issue of fact remains as to whether its conduct was unreasonable under the circumstances and it knew or recklessly disregarded the fact that its conduct was unreasonable.  The Court therefore will deny Auto-Owners' Cross-Motion for Summary Judgment on Plaintiffs' bad faith claim.  Finally, because Auto-Owners relies on the same theory to support its argument that it acted reasonably and therefore did not violate Colorado Revised Statutes § 10-3-1115(1)(a), the Court also will deny Auto-Owners' Cross-Motion for Summary Judgment on Plaintiffs' Colorado statutory claim.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. #95) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. #97) is hereby GRANTED in part and DENIED in part as further explained in this Order.

IT IS FURTHER ORDERED that Plaintiffs shall detach and file separately the Second Amended Complaint on or before February 15, 2013.

IT IS FURTHER ORDERED that in filing their answers to the Second Amended Complaint, Defendants need not respond to the allegations regarding claims under Nevada law, the Colorado Consumer Protection Act, stacking, an umbrella policy, or enforcement

of a separate property settlement.

IT IS FURTHER ORDERED that Defendant Auto-Owners Insurance Company's Cross-Motion for Summary Judgment (Doc. #98) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Question to the Supreme Court of Colorado (Doc. #109) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant Auto-Owners Insurance Company's Request for Hearing (Doc. #114) is hereby DENIED as moot.

DATED:  February 8, 2013

_____
PHILIP M. PRO
United States District Judge